United States District Court
Southern District of Texas
**ENTERED**
March 16, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| vs. | § § | 5:10-CR-1403 |
| ARGELIA CONTRERAS DE VELASQUEZ | § § § § | |

# REPORT AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b)(3). This case has been referred, by order of the District Court, to the United States Magistrate to review Petitioner's motion. (Dkt. No. 43). Argelia Contreras de Velasquez has filed a writ of error coram nobis asking the Court to vacate her 2010 conviction due to ineffective assistance of counsel. The Court recommends that Contreras de Velasquez's petition should be DENIED for two reasons.

First, Contreras de Velasquez fails to provide sound reason for not seeking earlier habeas relief while in custody and for waiting five years to file her coram nobis petition after being released from custody. Her excuses of lack of legal knowledge and lack of representation are not recognized by the court as sound reasons. Second, the doctrine of laches should apply to bar this case. The eight-year delay in filing the petition after conviction is unexcused, and the Government has sufficiently argued that it would be prejudiced by the release and more than likely deportation of the material witness, the lack of tracking of witnesses, and the passage of eight years. Because

the case can be dismissed on procedural grounds, the Court does not address the merits of the petitioner's ineffective assistance of counsel claim.

## FACTUAL BACKGROUND

On July 22, 2010, Contreras de Velasquez, a Mexican citizen and legal permanent resident, pleaded guilty to attempting to transport an undocumented Mexican citizen from Mexico into Laredo, Texas, with the expectation of receiving payment, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(i). (Dkt. Nos. 23, 29). She was arrested on May 21, 2010, for the conduct. (Dkt. No. 1). According to the factual basis of her plea agreement, Contreras de Velasquez applied for admission to the United States from Mexico through the Lincoln Juarez Bridge port of entry that day. (Dkt. No. 20 at 7-8). She was driving a vehicle with an adult female passenger, who presented a Texas driver's license and birth certificate that turned out not to be hers. *Id.* Contreras de Velasquez admitted to giving the female passenger the birth certificate and that she expected to receive $500 after taking the undocumented woman to Victoria, Texas. *Id.* Before pleading guilty, Contreras de Velasquez retained attorney Marc Antoni Gonzalez. (Dkt. No. 16). The Honorable U.S. District Judge Micaela Alvarez sentenced Contreras de Velasquez to time served plus three years of supervised release, with standard conditions and a special immigration condition. (Dkt. No. 29). Her term of supervised release started on December 1, 2010, and ended around December 2013. (Dkt. No. 31, Dkt. No. 49 at 3).

Contreras de Velasquez argues that her attorney incorrectly told her that her arrest guaranteed her deportation, whether or not she was convicted.[1] (Dkt. No. 38 at 7-13). She argues

---

[1] Her prior counsel, Marc A. Gonzalez, does not specifically dispute nor corroborate her allegations, but rather he stated his client's file has been destroyed in the normal course of business. He noted that he generally informs his clients of all trial rights, the presumption of innocence, and the consequences of plea agreements. He noted that no alternative plea offer was extended in this case. (Dkt. No. 42).

that this advice was defective and she would not have pleaded guilty if she knew there was a chance she could avoid deportation by going to trial and winning. *Id.* at 14. Alternatively, she argues that she would have changed her plea agreement strategy if she was given correct advice. *Id.*

On the day of her arrest at the port of entry, Contreras de Velasquez was issued a Notice from the U.S. Department of Homeland Security to appear for removal proceedings.[2] (Dkt. Nos. 38 at 4, 38-6 at 2). After her conviction, the notice was superseded by another notice on November 18, 2010, which included the facts of her conviction. *Id.* The notice stated that she was subject to removal for being an alien who knowingly encouraged, induced, assisted, abetted, or aided another alien to enter in violation of the law, under 8 U.S.C. § 1182(a)(6)(E)(i). Because she was arrested while trying to enter into the United States, she was charged in removal proceedings with being an arriving and "inadmissible" alien, rather than an admitted but "deportable" alien.[3] *Compare* 8 U.S.C. § 1182 (discussing "inadmissible aliens") *to* 8 U.S.C. § 1227 (discussing "deportable aliens"). Contreras de Velasquez alleges that shortly after her sentencing in her criminal case she was briefly moved to an immigration detention center under the custody of the Department of Homeland Security. (Dkt. No. 38-4 at 2-3). While there, she alleges that she learned from other detainees that she might have avoided deportation consequences if she had not been convicted. *Id.*; (Dkt. No. 49-1). The record does not include the outcome or current status of her removal proceedings.

In a sworn affidavit, Contreras de Velasquez said that she could not pursue relief from her criminal conviction earlier because she did not know there was a remedy and she could not afford

---

[2] Even before her conviction, Contreras de Velasquez was subject to deportation proceedings. *See* (Dkt. No. 38-6 at 2) ("This notice to Appear [dated November 18, 2010] supersedes the Notice to Appear issued on May 21, 2010.").

[3] Among other things, the distinction makes a difference in the burden of proof during proceedings. Inadmissible aliens bear the burden of proof, while the Government bears the burden of proof against deportable aliens. 8 U.S.C. § 1229a(c). In either case of inadmissible or deportable aliens, the Attorney General has the discretion to cancel removal if certain conditions are met. 8 U.S.C. § 1229b(a).

an attorney to pursue the case. (Dkt. No. 49-1 ¶ 2-5). She alleges that in August 2013 on the advice of her immigration attorney, she hired a criminal attorney to figure out whether it was possible to reopen her criminal case. *Id.* ¶ 3-5. The investigation ended in 2014 and she had no more money to pursue the case. *Id.* As she states:

> "It took me a long time to gather the money needed to continue. Even if I knew before November of 2013 that there was a chance I could reopen my case, I would not have had the money to pay for the work necessary to do so. There is no way I could have pursued relief from my criminal conviction before November of 2013." *Id.* ¶ 5.

If the Court grants Contreras de Velasquez's relief, the Government argues that it would be prejudiced in retrying the case because of the long delay. (Dkt. No. 45 at 6-7). The Government offers three reasons: the material witness in the case "was presumably removed from the country" and it would be "difficult if not impossible" to bring her to testify, some of the relevant Customs and Border Protection officers "have likely" moved away and it would be difficult to locate them, and finally, it is "unlikely" that the Government retained the case file on Contreras de Velasquez. *Id.* The Court takes judicial notice of the record that the material witness in this case was not presented at the initial appearance and was released. Instead, Lorena Rangel-Lozada, the female allegedly transported, was eight months pregnant and was released, and no material witness affidavit appears in the record.[4] (Dkt. No. 4).

---

[4] 18 U.S.C. § 3144, the statute governing the release and detention of a material witness, is regularly invoked in alien smuggling cases where the person being transported is undocumented and deportable. *Id.* ("If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title.").

## DISCUSSION

**I. Petition for writ of error coram nobis**

The petition for writ of error coram nobis is an "extraordinary remedy" warranted "only under circumstances compelling such action to achieve justice" and only to correct "errors of the most fundamental character." *U.S. v. Morgan*, 346 U.S. 502, 11-12 (1954); *see also United States v. Denedo*, 556 U.S. 904, 916 (2009) (holding that "courts must be cautious so that the extraordinary remedy of coram nobis issues only in extreme cases"). The writ of error coram nobis is an extension of the criminal case and is authorized under the All Writs Act, though, some of its procedures have been compared to a remedy similar to habeas corpus. Donald E. Wilkes, Jr., *Federal Postconviction Remedies and Relief Handbook with Forms*, § 2:20 Author's Comments (May 2019 Update).

The remedy is typically invoked to correct a conviction after a defendant has served her sentence but continues to face collateral consequences of that conviction, like immigration consequences. *U.S. v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004). In the Fifth Circuit, the Court has described the elements as follows:

> ". . . [T]he writ has been used as an avenue of collateral attack when the petitioner has completed his sentence and is no longer 'in custody' for purposes of seeking relief under either 28 U.S.C. § 2241 or § 2255. In *Morgan*, the Court emphasized that the writ of coram nobis could not be used as a substitute for appeal and should only be employed to correct errors 'of the most fundamental character.' *Morgan*, 346 U.S. at 512 (citing *United States v. Mayer*, 235 U.S. 55, 67–69 (1914)). The Court further admonished that '[c]ontinuation of litigation after final judgment and exhaustion or waiver of any statutory right of review should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *Id.* at 511. The writ will issue only when no other remedy is available and when 'sound reasons exist[ ] for failure to seek appropriate earlier relief.' *Id.* at 512. In addition, a petitioner bears the considerable burden of overcoming the presumption that previous judicial proceedings were correct. *Id.*"

*United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998). *See also Santos-Sanchez v. United States*, 548 F.3d 327, 332 (5th Cir. 2008), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010) (finding that ineffective assistance of counsel is a fundamental error warranting coram nobis relief); *Esogbue*, 357 F.3d at 534.

Therefore, a successful coram nobis claim requires the petitioner to prove, at least, the following elements: 1) the petitioner is no longer in custody, 2) no other remedy is currently available, 3) the petitioner continues to face collateral consequences of the conviction, 4) sound reasons exist for not seeking appropriate relief earlier, and 5) most importantly, a fundamental error occurred that requires correcting. *Id.* Additionally, the doctrine of laches can be applied to bar the writ, if the Government proves prejudice. *Dyer*, 136 F.3d at 429 ("In this posture, laches may properly bar relief.").

In the case at hand, there is no dispute about elements one, two, or three. Contreras de Velasquez is no longer in custody. She was sentenced to time served and her term of supervised release ended around December 2013. (Dkt. No. 31 at 1, 49 at 3). And the parties do not dispute whether any other remedy is currently available. The timing for appeal has long since run, and since Contreras de Velasquez is no longer in custody, she cannot file a habeas corpus petition. 28 U.S.C. § 2255(a). Finally, the Government does not contest that Contreras de Velasquez continues to face immigration-related collateral consequences stemming from her conviction.

Rather, the Government argues that no sound reason exists for failing to seek appropriate relief earlier, the petition should be barred by the doctrine of laches, and no fundamental error has occurred. Because the Court finds that the Petitioner does not show sound reason for the delay in

6

seeking appropriate relief and that laches applies, the Court does not address the question of fundamental error.[5]

### A. Petition fails to show sound reasons for not seeking earlier relief

Contreras de Velasquez's coram nobis petition should be denied because she failed to provide sound reason for not filing a habeas corpus petition while in custody and for waiting years to bring her current petition after release from custody. Her reasons of ignorance of the law and lack of funds to hire an attorney are not recognized as valid reasons to excuse delay. Instead, they represent the circumstances of the typical petitioner making a collateral attack. In order to show entitlement to the writ of error coram nobis, the petitioner must affirmatively show that "sound reasons exist for failure to seek appropriate relief." *Dryer*, 136 F.3d at 422. *Chico v. United States*, 703 Fed. App'x 292, 294 (5th Cir. 2017) (dismissing coram nobis claim when petitioner did not provide sound reason for waiting two years after being released from custody to file petition).

For example, sound reason can exist if an attorney's advice caused the delay. *Santos Sanchez v. United States*, No. L-03-MJ-4618-1, 2007 WL 9757565, at *3 (S.D. Tex. Jan. 26, 2007), *aff'd,* 482 Fed. App'x 953 (5th Cir. 2012) (finding sound reason when defendant followed criminal attorney's advice that he would be able to avoid deportation and filed a coram nobis petition only after he "realized the adverse effects" of his conviction and removal became apparent); *United States v. Kwan*, 407 F.3d 1005, 1013-14 (9th Cir. 2005) (finding sound reason when attorney's error was discovered after removal proceedings were reinitiated against Defendant).

---

[5] Ineffective assistance of counsel, especially regarding advice about immigration collateral consequences, can be a fundamental error worthy of coram nobis relief in certain cases. *See Esogbue,* 357 F.3d at 534*; Santos-Sanchez*, 548 F.3d at 332; *United States v. Castro*, 26 F.3d 557, 559 (5th Cir. 1994). With regard to the ineffective assistance of counsel claim in this case, the Government challenges the attorney deficiency prong. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). The Government does not dispute that the alleged advice, if given, was wrong. Instead, it argues that the incorrect advice does not amount to a deficiency that would trigger ineffective assistance of counsel. The Government also does not dispute the second prong of the ineffective assistance of counsel test – the assertion that the alleged advice, if deficient, prejudiced the petitioner.

A petitioner must provide sound reason for delay if she previously had the opportunity but failed to file a collateral attack. *Esogbue*, 357 F.3d at 535. In *United States v. Esogbue*, a petitioner filed an unsuccessful habeas petition while in custody, then filed a new petition for coram nobis relief after release. *Id.* at 533. When remanding the case, the Court pointed out that the petitioner failed to seek permission while in custody to file a successive habeas petition. *Id.* at 535. The Court held that if the petitioner's coram nobis petition amounted to hardly more than "claims that he reasonably could have raised in that [earlier, unfiled] petition, it cannot be said that he has made the necessary showing of a 'complete miscarriage of justice.'" *Id.* The Court warned against allowing coram nobis to be used to circumvent the strict timing requirements of the habeas statute. *Id.* (favorably citing *Matus–Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002)).

A person on federal supervised release is considered to be in "custody" and is, therefore, able to file a habeas corpus petition during that time. *Pack v. Yusuff*, 218 F.3d 448, 454 n.5 (5th Cir. 2000) ("Usually, 'custody' signifies incarceration or supervised release, but in general it encompasses most restrictions on liberty resulting from a criminal conviction."). *Ojo v. I.N.S.*, 106 F.3d 680, 681 n.2 (5th Cir. 1997) ("Although Ojo has completed his prison term, he is within his three-year term of supervised release and thus remains 'in custody' for purposes of habeas relief.") (citing *Jones v. Cunningham*, 371 U.S. 236, 241-43 (1963)). For example, in *United States v. Castillo*, the petitioner attempted to move for a writ of error coram nobis when she was still on supervised release. No. CR C-10-941-1, 2013 WL 842810, at *2 (S.D. Tex. Mar. 6, 2013). The Court found that "she is still in custody and not eligible for relief by writ of coram nobis." *Id.* Instead, the Court determined that the correct remedy for a person on supervised release is a "motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255." *Id.* (collecting cases).

Ignorance of the law and lack of legal representation are not sound reasons for failing to seek earlier relief. The Petitioner here made no citation and the Court found no case inside the Fifth Circuit that found sound reason for failing to seek relief based on petitioner's ignorance of the law or lack of legal representation due to financial hardship. *See United States v. Malouff*, 613 Fed. App'x 432 (5th Cir. 2015) ("[Petitioner] gives no reason for his failure to discover the case for eight years except that he is a lay person. As he has failed to make the necessary showing of a complete miscarriage of justice, the district court did not err by denying his petition for a writ of coram nobis."); *Dyer*, 136 F.3d at 428 n.23 (finding no reasonable explanation for delay when counsel said the delay was caused because Defendant is "not a lawyer.").

Moreover, in the similar analysis for the tolling of the statute of limitations in habeas petitions, courts have routinely rejected the excuse of lack of sophistication, indigency, and lack of representation. *Johnson v. United States*, 544 U.S. 295, 311 (2005) ("[Defendant] has offered no explanation for this delay, beyond observing that he was acting *pro se* and lacked the sophistication to understand the procedures."). *Henderson v. Johnson*, 1 F. Supp. 2d 650, 656 (N.D. Tex. 1998) (rejecting excuse that petitioner did not have professional assistance). The reality is that the vast majority of collateral attacks stem from indigent petitioners acting *pro se*. *See* Richard H. Fallon et al., *Hart & Wechsler's The Federal Courts and the Federal System* 1264 (7th ed. 2015) (citing study that found more than 90 percent of non-capital habeas petitions challenging state convictions proceeded *pro se*).

In the case here, Contreras de Velasquez was sentenced in 2010 to time served plus three years of supervised release, meaning that she had an opportunity to file a habeas petition challenging her conviction while in custody on supervised release. *Pack*, 218 F.3d at 454. *Ojo*, 106 F.3d at 681. Contreras de Velasquez concedes that she almost immediately found out about

9

her attorney's alleged error after the Court entered judgment but says that her lack of representation and knowledge of the law prevented her from challenging the conviction before her supervised release ended. (Dkt. No. 49-1). Unlike the case of *Santos Sanchez*, 2007 WL 9757565, at *3, the advice from Contreras de Velasquez's attorney did not prevent her from seeking earlier relief. And being "a lay person" without representation is no valid excuse for the delay in challenging her conviction. *Malouff*, 613 Fed. App'x at 432. Every year, thousands of individuals in custody – many indigent – file collateral attacks on their conviction, many of whom are "acting *pro se* and lacked [legal] sophistication." *Johnson*, 544 U.S. at 311. The fact that she was on supervised release rather than in prison does not alter the result. Contreras de Velasquez's circumstances reflect the mine run of collateral attacks and do not provide sound reason for delay. Richard H. Fallon et al., *supra*, at 1264; *Malouff*, 613 Fed. App'x at 432; *Johnson*, 544 U.S. at 31.

Further, Contreras de Velasquez does not provide sound reason for her years-long delay in filing her coram nobis petition once she was no longer in custody. She had been out of custody for five years before filing the petition before this Court. She argues that the delay is the result of her lack of funds to hire an attorney, however, like mentioned above, a lack of representation does not provide sound reason for delay. Her failure to provide sound reason for the five-year delay after being released from custody bars relief and should not be excused. *Chico*, 703 Fed. App'x at 294 (dismissing for failure to explain two-year delay after release from custody). *Cf. Zapata-Banda v. United States*, No. CIV. B:10-256, 2011 WL 1113586, at *3 (S.D. Tex. Mar. 7, 2011) (excusing delay of six months rather than multiple years).

Contreras de Velasquez's coram nobis petition should be dismissed because she fails to provide sound reason for not seeking earlier habeas relief while in custody and she fails to provide sound reason for waiting five years to file her coram nobis petition after being released from

10

custody. Her ignorance of the law and her lack of funds to hire an attorney to pursue the case are not recognized as sound reasons.

### B.  Laches bars relief

In addition, Contreras de Velasquez's coram nobis petition should be barred by the doctrine of laches because her unexcused delay would prejudice the Government in retrying the case. Contreras de Velasquez's eight-year delay is not excused by her lack of legal knowledge or lack of funds to hire an attorney to pursue the case, as analyzed above. Additionally, the Government has sufficiently argued it would be prejudiced because the material witness in this case has been released and more than likely deported, the Government has not kept track of the witnesses, and eight years have passed since the conviction.

Laches is an equitable remedy to be used at the discretion of the court. It is distinct from the "sound reason" element in coram nobis cases but is overlapping. *Lee v. United States*, No. CIV.A. 3:08-CV-2044-, 2009 WL 3762112, at *4 (N.D. Tex. Nov. 10, 2009) (finding that "application of laches is a sufficient, but not necessary, bar to consideration of a petition for coram nobis relief" due to the "sound reason" element). The party asserting a laches defense must prove three elements: delay, the delay is unexcused, and the moving party is unduly prejudiced by the delay. *Clymore v. United States*, 217 F.3d 370, 376 (5th Cir. 2000), *as corrected on reh'g* (Aug. 24, 2000). Laches is evaluated through a burden shifting regime. If the moving party makes a prima facia showing of laches, it becomes the burden of the non-moving party to produce sufficient evidence to show excusable delay or lack of prejudice. *McDonnell v. Estelle*, 666 F.2d 246, 251 (5th Cir. 1982) (applying a former habeas rule that incorporated the doctrine of laches); *In re Gold*, 375 B.R. 316, 335-36 (Bankr. N.D. Tex. 2007). *See also Telink, Inc. v. United States, 24 F.3d 42, 47 (9th Cir. 1994)* (applying burden shifting to laches in coram nobis case in the Ninth Circuit).

If sufficient evidence is produced, the burden shifts back to the moving party to ultimately prove unreasonable delay and prejudice. *Id.* If sufficient evidence is not produced, the court must infer unreasonable delay or prejudice. *Id.*

In *United States v. Dyer*, the Court found laches applied in a coram nobis petition when the Government made "plausible, facially reasonable" allegations of prejudice that went unchallenged by the opponent. 136 F.3d at 429. In that case, the Government noted that the case file had been scrubbed, the investigators would be "difficult, perhaps impossible, to locate" because some had moved away or retired, and the Government's other witnesses would "very unlikely" be willing to testify because of their own subsequent convictions. *Id.* at 428. The Court also noted that the memory of any witness who would potentially testify would have faded in the 12 years between the sentencing in 1984 and the time when the coram nobis petition was brought in 1996. *Id.* at 428 n.25. *See also Telink, Inc.*, 24 F.3d at 48 (favorably cited by *Dyer*) (finding prejudice and factoring in the following facts: eight years elapsed since indictment, witness memories would have faded in that time, one government witness had died, it would be difficult to reassemble Government data and the reconvene the prosecution team).

In an alien smuggling case involving material witnesses, the Honorable District Court Judge George P. Kazen in the Laredo Division similarly found prejudice. *Cortes-Mendoza v. United States*, No. 5:16-MC-017, 2016 WL 9663265, at *1 (S.D. Tex. June 13, 2016), *aff'd*, 694 Fed. App'x 295 (5th Cir. 2017) (Finding that deportation of material witnesses and faded memories after 20 years "alone is a significant prejudice created by the delay"). In that case, the Government alleged in its brief that the material witnesses had been released. (Government's Response, 5:16-MC-17, Dkt No. 6 at 11-12). Presiding in a division that regularly handles similar cases, the Court

in its opinion equated the release of the material witnesses with their deportation.[6] *Cortes-Mendoza v. United States*, 2016 WL 9663265, at *1. ("The Government argues that it is prejudiced by the fact that all material witnesses have since been deported."). In that case, the Court also highlighted the Government's argument that the statute of limitations to re-indict the defendant had passed during the more than 20 years since the conduct occurred. *Id.*

In *U.S. v. Maiss*, the Court found prejudice after a five-year delay in bringing a coram nobis petition when the Government made plausible allegations that the case has been closed, the records stored, the FBI agents transferred, and the Government had not kept track of the witnesses. No. CR. A. 94-391, 2001 WL 515238, at *4 (E.D. La. May 15, 2001).

Turning to the facts in this case, Contreras de Velasquez waited eight years from judgement to challenge the conviction and five years from her release from custody.[7] The analysis above – in Section A – finds that Contreras de Velasquez's delay in bringing the coram nobis petition is not excused by asserting either ignorance of the law or lack of legal representation. The only remaining issue is prejudice to the Government.

The Government alleges that it would be prejudiced by the eight-year delay because of its ability to find the material witness, its difficulty in tracking down Customs and Border Protection agents, and potentially by its lack of retention of records. (Dkt. No. 45 at 6-7). Inherent in the Government's argument is that it has not kept track of the potential witnesses, and it is apparent

---

[6] *See also Santos Sanchez*, 2007 WL 9757565, at *3 n.3 (finding that it would be difficult for the Government to secure the material witness because the witness was "mostly likely removed from the United States" but noting that the Government did not raise the issue of prejudice).

[7] Contreras de Velasquez, however, filed her petition before the 10-year statute of limitations has run for the Government to re-indict the case. *See* 18 U.S.C. § 3298 (referencing section 274(a) of the Immigration and Nationality Act); Anne E. Melley et al., *Cyclopedia of Federal Procedure, Limitations periods for sex offenses, trafficking offenses, and offenses involving children*, 11 Cyc. of Federal Proc. § 39:188 (2020 3d ed.); *United States v. Pena-Garza*, No. CR 6:15-27, 2017 WL 5886144, at *5 (S.D. Tex. Nov. 29, 2017) ("The 10–year statute of limitations for conspiracy to transport undocumented aliens as set forth in 18 U.S.C. § 3298 has not expired in this case.").

from the cases cited that the long delay would affect the memory of witnesses if they were tracked down.[8] While the material witness would likely have been difficult to track down initially because she was not kept in the Court's custody, the passage of time exacerbates that difficulty.

Contreras de Velasquez's reply challenges the specificity of the Government's prejudice allegations. Rather than produce evidence that the Government is not prejudiced by delay, Contreras de Velasquez appears to argue that the Government has not made a prima facia showing of prejudice in the first place. (Dkt. No. 49 at 4-7); *see McDonnell*, 666 F.2d at 251 (finding that the moving party bears the initial burden of making a prima facia showing); *Dyer*, 136 F.3d at 429 (requiring the Government to make "plausible, facially reasonable" allegations at the outset). Contreras de Velasquez argues that the Government's claims are speculative, because the Government does not appear to have actually investigated whether the material witness had been deported, whether any agents had moved away or retired, or whether the case file still exists. (Dkt. No. 49 at 6-7).

The Government, however, has more than exceeded its initial burden to make a plausible, facially reasonable claim of prejudice given the release of the material witness, the more than likely deportation of that witness who was found to be a Mexican citizen in the country without documentation, the lack of tracking of any witnesses by the Government in the intervening years, and the effect of eight years on witness memories.[9] *See Cortes-Mendoza*, 2016 WL 9663265, at

---

[8] Both parties cite to the Fifth Circuit case of *Dyer*, which addresses the passage of time on memory: "[C]onsidering the amount of time that has elapsed [12 years], even if they were found and gathered to testify at trial, their memories of the investigation would undoubtably have faded somewhat in the intervening decade." 136 F.3d at 428 n.25.

[9] The Court also notes that the long delay has prevented the parties from ever fully addressing the facts of the ineffective assistance of counsel claim. Attorney Marc. A Gonzalez told the court that his office had disposed of Contreras de Velasquez's file in accordance with guidance from the American Bar Association. He noted that the policy of his firm is to "destroy files five (5) years after a client/defendant has completed their time and their term of supervised release has expired." (Dkt. No. 40). *See Telink*, 24 F.3d at 48 ("In making a determination of prejudice, the effect of the delay on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant.").

*1 (factoring the release of material witnesses into the prejudice analysis and presuming the witnesses' deportation in an alien smuggling case); *Maiss*, 2001 WL 515238, at *4 (factoring into the prejudice analysis the fact that the Government had not kept track of the witnesses in the intervening years); *Dyer*, 136 F.3d at 428 n.25 (factoring in 12-year delay on witness memory); *Telink, Inc.*, 24 F.3d at 48 (finding that eight years was a substantial period of time for "the government's witnesses and their memories [to] have been out-of-touch with the case"). The record contains more than mere speculation of prejudice, and the Petitioner does not rebut the claim of prejudice with evidence. While it would be more definite if the Government affirmatively checked to see if the case records exist or whether the Customs and Border Protection agents remain on the force and in the area, (Dkt. No. 45 at 6-7), the Government has nevertheless met its burden of making a prima facia showing of prejudice and Petitioner has not adduced evidence to the contrary.

The doctrine of laches should bar Contreras de Velasquez's coram nobis petition because her eight-year delay in filing the petition is unexcused, and the Government has sufficiently argued that it would be prejudiced given the combination of the release and more than likely deportation of the material witness, the lack of tracking of any former witnesses in the intervening years, and the effect of an eight year delay on witness memories.

## CONCLUSION

The Court recommends that Contreras de Velasquez's coram nobis petition should be DENIED for the reasons stated above. Contreras de Velasquez has not provided sound reason for her failure to seek earlier relief, and additionally, the doctrine of laches applies to bar this petition.

## NOTICE OF RIGHT TO OBJECT

Petitioner may file objections to this Report and Recommendations. Objections to any part of this Report and Recommendations must be specific, written objections and must be filed within 14 days after Petitioner is served with a copy. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's Report and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to all parties.

Signed on March 16, 2020, at Laredo, Texas.

*Diana Song Quiroga*
DIANA SONG QUIROGA
UNITED STATES MAGISTRATE JUDGE